IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**ERIC BEUHRING,**

    **Plaintiff,**                                    Civil Action No. 3:22-cv-224
                                                       **JURY TRIAL DEMANDED**

v.

**BEST BUY STORES, L.P., a foreign corporation,
and PAUL DURBIN, an individual.**

    **Defendants**

## COMPLAINT

Plaintiff, Eric Beuhring, a citizen of the United States and resident of the State of West Virginia, brings this civil action under the Family and Medical Leave Act of 1993 (FMLA), 29 USC §2601 *et seq*. and the common law of West Virginia. The Defendants, Best Buy Stores, L.P. and Paul Durbin, retaliated and discriminated against Mr. Beuhring for using leave pursuant to FMLA. Mr. Beuhring received approval for paternity leave based upon his newborn son's medical situation that caused the baby to remain hospitalized for over two months. During this leave, Mr. Beuhring received text messages and critique of his work performance. Mr. Beuhring served Best Buy for 19 years receiving over 15 promotions. Yet after his use of FMLA, Defendants falsely claimed Mr. Beuhring violated company policies – giving inconsistent reasons for his termination. Mr. Beuhring demands a trial by a jury of his peers on the counts contained below.

## PARTIES

1. Plaintiff Eric Beuhring is a citizen and resident of Putnam County, West Virginia.

2. Defendant, Best Buy, L.P. (hereafter "Best Buy"), is a foreign corporation with its home office in Minneapolis, Minnesota operating a store in Cabell County, West Virginia.

1

3. Defendant, Paul Durbin, is a citizen and resident of Franklin County, Ohio, and is and was employed at Best Buy as a District Manager, and specifically, the District Manager over Plaintiff.

4. At all times alleged, Best Buy acted by and through its agents, employees, supervisors, directors, members, officers and assigns and within the full scope of agency, office, employment, and/or assignment.

5. At all times alleged, Defendant Best Buy was a covered "employer" within the meaning of the FMLA.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this civil action under 28 U.S.C. §1331 and §1332.

7. Venue is appropriate in this case under 28 U.S.C. §1391(b) because Defendants are residents of the state of West Virginia under 28 U.S.C. §1391(c)(2) and a substantial part of the events giving rise to this claim occurred in Cabell County, which is in the Southern District of West Virginia.

## FACTS

8. On July 10, 2002, Defendant hired Mr. Beuhring as a part-time Loss Prevention Associate.

9. Throughout his time working for Defendant Best Buy, Plaintiff held multiple positions up until Best Buy first promoted him to Product Processing Manager at a Wheeling, West Virginia location (2008).

10. In 2010, Best Buy transferred Plaintiff to one its Pittsburgh, Pennsylvania stores as a Sales Manager.

11. Best Buy transferred Plaintiff back to Huntington, West Virginia as its General Manager on or about September 13, 2013.

12. Over the course of his 19 plus years of service with Best Buy, Plaintiff received 15 to 20 pay raises and multiple promotions.

13. For the entirety of his employment at Best Buy, Plaintiff always met or exceeded Defendant's expectations.

14. From September 13, 2013 to his termination, Plaintiff never received any type of discipline – verbal or written.

15. During the 2020 and 2021 years, Defendant's Huntington, West Virginia location finished in the Top 50 and Top 100 out of approximately 1,053 stores, respectively, in the company's "Holiday Achiever's Contest" – a nationwide competition among Best Buy stores.

16. Around March 2021, Plaintiff's wife had pregnancy complications and was hospitalized. Plaintiff's wife went into emergency labor giving birth to a son.

17. As a result of Plaintiff's wife's complications, their child spent 63 days in the Neo-Natal Intensive Care Unit ("NICU").

18. Plaintiff's wife spent 9 to 10 days hospitalized during this time due to health complications. Plaintiff used Paid Time Off ("PTO") to stay with her the entire time.

19. During the 9 to 10 days of her hospitalization, Plaintiff's District Manager, Paul Durbin, who works out of Columbus, Ohio called Plaintiff to check-in to discuss work issues and specifically, Mr. Durbin asked Plaintiff, "Do you really need to be off for all this?"

20. Plaintiff filed for and received leave pursuant to Family Medical Leave Act and Defendant's maternity / paternity leave policies.

21. Defendant never provided Plaintiff with an explanation and notice of his FMLA rights. While Plaintiff received his leave, he never received FMLA paperwork or applications.

22. On Friday, April 2, 2021, Mr. Durbin began scrutinizing Plaintiff's work performance texting him whether Mr. Durbin needed to "insert himself" in Plaintiff's store to handle management issues. Over the course of Plaintiff's eight years as General Manager of the Huntington store, Mr. Durbin never made such a comment or suggestion previously.

23. Plaintiff took three 2-week periods over three months for paternity leave – May 11 to 25, 2021, June 6 to 19, 2021, and July 18 to 31, 2021.

24. On May 26, 2021, his first day back from his initial leave, Mr. Durbin once again began interjecting into Plaintiff's management and store issues.

25. Mr. Durbin became Plaintiff's District Manager in 2018. From 2018 up until 2021, Plaintiff described his relationship with Mr. Durbin as positive and professional. That is part of the reason Mr. Durbin's comments about Plaintiff staying in the hospital with his wife and the timing of his criticisms stood out to Plaintiff.

26. On December 23, 2021, one of Plaintiff's associates, Justin Brown approached Plaintiff about a missing television from inventory. Through his research, Mr. Brown found that the delivery team took the TV on December 22, 2021 – the prior day. It was a 75-inch Samsung TV that cost approximately $2,000.00. The TV was scheduled for delivery on December 23, 2021.

27. Plaintiff interviewed the delivery driver, Jimmy Sorrels, whom Geek Squad employs. Geek Squad operates under Best Buy's umbrella, but "in-home" employees do not report to Best Buy local store management. Mr. Sorrels stated that he did not know where the TV went and could not answer Plaintiff's questions. Mr. Sorrels became defensive. Plaintiff was clear that he was not accusing the delivery driver, Plaintiff was attempting to locate a missing TV.

28. On that same day, Plaintiff contacted the Market Asset Protection Manager, Jim Noren, to report the missing TV. Mr. Noren did not answer at that time.

29. Plaintiff then contacted Geek Squad Manager, Shawn Clark, about the missing TV. Plaintiff worked with Mr. Clark since his first day in 2002. Plaintiff had a picture of the delivery driver taking the tv out of the store.

30. Plaintiff informed his District Manager of the missing TV. Plaintiff was simply conducting his due diligence as the store's General Manager as he has always done in similar situations.

31. On December 24, 2021, someone stole the car of one of Plaintiff's part-time associates (a Best Buy employee) from the Best Buy parking lot. Upon information and belief, that employee called law enforcement.

32. The police investigated the matter and reported that it was likely an "inside job." The employee whose car was stolen, Bradley Johnson, sent Plaintiff a message about issues related to the stolen TV, the stolen vehicle, and the conduct of the delivery driver and others.

33. On December 28, 2021, Mr. Johnson informed Plaintiff that the delivery driver's previous employer terminated him for theft. Plaintiff called Mr. Durbin, Mr. Noren, and Mr. Clark about the information he had received. Mr. Noren advised Plaintiff to call Whitney Wheatley, who was the Geek Squad Asset Protection Manager and she would be leading the investigation. Mr. Noren requested the clock-in and clock-out time of the delivery drivers so that he and others could review the surveillance footage.

34. Plaintiff asked the Geek Squad direct manager, Kaley St. John, for the information that Mr. Noren requested. She never provided that information.

35. On January 4, 2022, Ms. Wheatley asked Plaintiff why he started the investigation and Plaintiff stated that he followed protocol and instructions from his supervisors. She informed Plaintiff that she saw no reason to continue the investigation. Upon information and belief, Ms. Wheatley, who left her employment at Best Buy only weeks later, was in a relationship with Mr. Sorrels, who was a suspect in the theft.

36. On January 26, 2022, Mr. Durbin came to Defendant's store in Huntington, West Virginia to meet with Plaintiff. He informed Plaintiff that he had "inappropriate" relationships in the store. His alleged the inappropriate relationship was regarding an employee of 9-plus years, David Wolfe, Jr. In 2020, Plaintiff got married to the sister of Mr. Wolfe's wife; a Best Buy manager in Charleston presided over the wedding. No one brought any type of favoritism accusations against Plaintiff at any time nor does any evidence prove such an occurrence. Mr. Durbin was aware of Plaintiff's marriage and the indirect connection with Mr. Wolfe. Upon information and belief, Mr. Durbin disciplined Mr. Wolfe for the same thing as a cover up to Defendant's real reason for terminating Plaintiff.

37. At the time, Plaintiff did not understand why his wife and her family was at the subject of his termination.

38. Despite Mr. Durbin addressing "inappropriate" relationships as the reason for his termination, Mr. Durbin presented him with a letter that cited:

"an investigation into your conduct has resulted in the reasonable conclusion that you have failed to use good and reasonable judgment as it relates to your compliance with company policy and rules and the execution of work responsibilities."

Plaintiff had no explanation as to what Mr. Durbin was referring to because the only thing Mr. Durbin discussed in the termination meeting was Plaintiff's relationship with Mr. Wolfe. Additionally, Defendants never identified or explained what policies or rules

Plaintiff allegedly violated – only a broad assertion as such. Nor did they inform him of any work responsibilities he did not perform or execute during their claimed "investigation."

39. In terminating Plaintiff, Mr. Durbin violated Best Buy's own company policies on progressive discipline and was providing inconsistent reasons to management and other employees at Best Buy as to why Plaintiff was terminated.

40. During the unemployment process, Plaintiff received a third reason for his termination - Defendant claimed he was terminated for "unprofessional conduct" toward another employee. That was the first Plaintiff had heard about his alleged conduct toward another employee. There was no mention of his marital connection with Mr. Wolfe.

**COUNT I: DISCRIMINATION/RETALIATION FOR PLAINTIFF EXERCISING RIGHTS AND ENGAGING IN CONDUCT PROTECTED UNDER THE FAMILY AND MEDICAL LEAVE ACT**

41. Plaintiff incorporates the previous paragraphs as if set forth herein.

42. Before requesting and/or requiring a leave of absence (FMLA leave), Plaintiff had been employed by Defendants for longer than twelve (12) months and had worked at least 1250 hours of service for Defendants during the prior twelve-month period.

43. When Plaintiff notified Defendants of his newborn baby and wife's medical condition (and the maternity/paternity leave) for his need to take time off from work to care for and treat the same, he gave adequate and proper notice to take leave under the FMLA.

44. When Plaintiff requested and/or required leave, he was qualified and eligible for a leave of absence under the FMLA, and, in fact, Defendants approved his FMLA leave.

45. In notifying Defendants of the paternity leave and/or serious health condition of his child and his taking time to assist in the care for his child, Plaintiff engaged in conduct protected

under the FMLA that entitles him to all relief under the FMLA, including job protection.

46. Defendants took adverse action against Plaintiff, including, but not limited to, falsely claiming he had "inappropriate relations" at Best Buy then terminated Plaintiff after he had received FMLA leave.

47. Plaintiff's protected conduct under the FMLA was a motivating factor in Defendants' decision to take adverse action against Plaintiff, up to and including termination.

48. Defendants' termination of Plaintiff after he notified Defendants that he needed leave because his child had a serious health condition and took time off work due to his child's health condition was reckless and in deliberate disregard of Plaintiff's rights under the FMLA, and in violation of the FMLA's anti-discrimination and retaliation provisions.

49. Defendants' conduct, up to and including its termination of Plaintiff, is and was in bad faith, malicious, reckless and purposefully indifferent to Plaintiff's rights under the FMLA, and he seeks recovery as set forth in the prayer for relief.

## COUNT II: *HARLESS* CLAIM BASED ON THE PUBLIC POLICIES OF FMLA

50. Plaintiff incorporates the previous paragraphs as if set forth herein.

51. Before his termination by Defendants, Plaintiff had performed all conditions, covenants, promises, duties and responsibilities required of her and in accordance and conformity with Defendant's legitimate expectations.

52. In striving to comply with his duties as an employee and with the Family and Medical Leave Act, Plaintiff notified Defendants of his need for FMLA, and received approval for FMLA leave.

53. Plaintiff's discharge followed his protected activity (receipt of FMLA) within such a period of time that the Court can make an inference of retaliatory motivation.

54. The Defendants' treatment and termination of Plaintiff is a retaliatory and wrongful discharge in violation of the public policies embodied in the FMLA. *Vandevander v. Verizon Wireless, LLC*, 149 F. Supp. 3d 724, 731 (S.D.W.Va. 2016)(Chambers, J.) (noting FMLA provides a substantial public policy sufficient to support a West Virginia common law claim for retaliatory discharge in violation of public policy); *Collins v. Defendants Home Ctrs., LLC*, 2017 U.S. Dist. LEXIS 201430 (S.D.W.Va. December 7, 2017) (Chambers, J.) (Following *Vandevander*).

55. As a direct and proximate result of Defendants' intentional, discriminatory, and retaliatory acts against him, Plaintiff has suffered and continues to suffer injury, including, but not limited to, loss of past and future earnings and other benefits of employment, anguish, pain and suffering, humiliation, loss of enjoyment of life, costs associated with obtaining employment, embarrassment, damage to his reputation and other past and future pecuniary losses. Wherefore, Plaintiff seeks relief as set forth below.

56. Defendants and their agents knew or reasonably should have known that their actions taken against Plaintiff were false, wanton, willful, and malicious and designed and intended solely to harm Plaintiff.

57. Defendants' actions are and were indifferent to Plaintiff's rights under the public policies embodied in FMLA. Wherefore, Plaintiff seeks punitive damages and relief as provided below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Eric Beuhring, requests judgment against the Defendants as follows:

a. On all Counts, actual damages including, but not limited to, damages for lost wages (back and front pay), lost compensation and benefits, and costs of treatment for emotional and/or physical harm suffered by Plaintiff as a direct and/or proximate result of the above stated unlawful actions;

b. On Count I, liquidated damages and all amounts recoverable under the FMLA;

c. On Counts II, general and compensatory damages for annoyance, inconvenience, embarrassment anxiety, humiliation, and any other emotional harm suffered by Plaintiff as a direct and/or proximate result of Defendants' aforementioned actions;

d. Punitive damages against Defendant Best Buy and the individual Defendant, in his individual capacity only, sufficient to deter future improper and unlawful conduct;

e. Attorneys' fees and the costs of pursuing this action;

f. Prejudgment and post judgment interest on all amounts allowed by law;

g. Such further relief as is supported by the law; and

h. Any relief this Court deems fair and proper in the interests of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

**Respectfully submitted,**

**PLAINTIFF,
BY COUNSEL,**

**\_\_\_\_/s/ Abraham J. Saad\_\_\_\_
Abraham J. Saad, WVSB #10134
Hoyt E. Glazer, WVSB #6479
Eric B. Anderson, WVSB #11895
GLAZER SAAD ANDERSON L.C.
320 9th Street, Suite B
P.O. Box 1638
Huntington, WV 25717-1638
Telephone: (304) 522-4149
Facsimile: (800) 879-7248
Email: abe@gsalaw-wv.com
           hoyt@gsalaw-wv.com
           eric@gsalaw-wv.com**